IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| D. WHITE-PECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22-cv-01856 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| WEXFORD HEALTH SOURCES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant's motion to dismiss Plaintiff's First Amended Complaint [62] is granted in part and denied in part. Count I of the 1st Amended Complaint is dismissed with prejudice. The motion is otherwise denied. Plaintiff's motion to strike in opposition to the motion to dismiss [68] is denied as moot. See the accompanying Statement for details.

**STATEMENT**

Plaintiff Dehvin White-Peck[1] alleges that his former employer, Defendant Wexford Health Sources ("Wexford"), discriminated against him on the basis of his race, national origin, and ethnicity, in violation of 42 U.S.C. § 1981, and then retaliated against him for complaining about it. Now before the Court is Wexford's motion to dismiss the 1st Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 62.) For the reasons that follow, Wexford's motion is granted in part and denied in part.

**I.    Background**

For purposes of Wexford's motion to dismiss, the Court accepts all well-pleaded factual allegations in White-Peck's 1st Amended Complaint ("FAC") as true and draws all reasonable inferences from those facts in White-Peck's favor as the non-moving party. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

White-Peck is a man who is "black and of African descent." (FAC at 2, ¶ 2, Dkt. No. 88.[2]) He was employed as a mental health worker by Wexford at a state correctional facility in Joliet, Illinois from 2018 to 2021. (*Id.* at 3, ¶¶ 13, 15.) He describes his "body type\anatomy" as "one common to black people." (*Id.* at 2, ¶ 5.) At some point, Wexford "expressed that his physical

---

[1] The official case caption uses only White-Peck's first initial. Some of the filings in this case, however, have included his unabbreviated name (*e.g.*, Dkt. No. 84-1), so the Court includes it here.

[2] Because the FAC's paragraph numbering resets in every section, the Court will include both the page number and the paragraph number when citing the FAC in this order.

anatomy was unacceptable" and required him to conceal his body parts (namely, his "waist, buttocks, thighs, arms, and chest") by wearing baggy clothing. (*Id.* at 3–4, ¶¶ 7, 17.) Wexford claimed to base this decision on concerns that White-Peck's "body type\anatomy causes prisoners to masturbate." (*Id.* at 4, ¶ 20.) Meanwhile, white employees with similar body types were not required to wear baggy clothing, even though "IDOC prisoners get aroused and masturbate to all body types as to persons both white and black." (*Id.* at 3–5, ¶¶ 8, 21, 23.) White-Peck complained of racial discrimination to Wexford, but he suffered "more harassment" as a result. (*Id.* at 7, ¶ 3.)

The alleged discrimination harmed White-Peck in a few ways. First, he suffered discomfort from wearing baggy clothes. (*Id.* at 5, ¶ 26.) Second, he received a negative mark on his employment record. (*Id.* at 5–6, ¶ 29.) Third, he was threatened with termination. (*Id.* at 5, ¶ 25.) And fourth, he "resigned in disgust because of the racial harassment, as in constructive discharge." (*Id.*)

White-Peck subsequently filed this lawsuit against Wexford. His initial complaint (Dkt. No. 1) alleged that Wexford violated 42 U.S.C. § 1981 in two ways: (1) harassing him and discriminating against him based on his race (Count I), and (2) retaliating against him for reporting his grievances (Count II). Wexford moved to dismiss White-Peck's initial complaint for failure to state a claim. (Dkt. No. 20.) That motion was granted without prejudice as to Count I but denied as to Count II. (Dkt. No. 46.) In dismissing Count I, the Court first noted that White-Peck had not suggested any plausible claim based on ethnicity or national origin, and then found that he had not plausibly alleged an adverse employment action, a requirement for § 1981 employment discrimination claims. White-Peck moved for reconsideration, which the Court denied. (Dkt. No. 54.) The Court then granted him leave to amend his complaint to cure the deficiencies of Count I. Thereafter, the case was reassigned to the undersigned judge. And then White-Peck filed the FAC (Dkt. No. 88), which features a revised Count I and an unchanged Count II. The FAC is the subject of Wexford's pending motion to dismiss. (Dkt. No. 62.) In addition, White-Peck has filed a motion to strike from Wexford's motion any request for the Court to revisit its decision not to dismiss Count II. (Dkt. No. 68.) Specifically, White-Peck argues that the predecessor judge's ruling on Count II remains controlling.

II. **Discussion**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In considering the instant motion to dismiss, the Court is mindful that some rulings rendered by the predecessor judge may be entitled to deference. *See Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997) ("[T]he law of the case doctrine . . . reflects the rightful expectation of litigants that a change of judges mid-way through a case will not mean going back to square one."). When a case has been reassigned, "the second judge may alter previous rulings if he is

2

convinced they are incorrect," though "he is not free to do so . . . merely because he has a different view of the law or facts from the first judge." *Id.* (internal quotation marks omitted) (alteration in original). "Instead, the presumption is that earlier rulings will stand, even though it can be overcome for compelling reasons (such as new controlling law or clear error)." *Id.*

The law of the case doctrine, however, has limits. It is "discretionary" and "does not apply at all where the precise issue presented differs from the one decided earlier." *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022). Notably, when the plaintiff files an amended complaint, that "pleading supersedes all prior pleadings, and therefore the Court must take a fresh, *i.e.*, *de novo* look at whether the allegations in the Amended Complaint state a claim." *Seeks v. Boeing Co.*, 752 F. Supp. 3d 992, 1013 (N.D. Ill. 2024) (citing *Wellness Cmty.-Nat'l v. Wellness H.*, 70 F.3d 46, 49 (7th Cir. 1995)). However, "to the extent that [the previous court] made any rulings with respect to allegations that did not change from the original complaint, . . . the Court should generally, consistent with the law of the case, stick to those prior rulings." *Id.*

### A. Count I: Race discrimination, harassment, and hostile work environment

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). Plaintiffs seeking to assert a § 1981 claim must plead that "(1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Additionally, "[an] essential element of a discrimination claim is an adverse employment action." *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018). As the predecessor judge explained in dismissing Count I of the original complaint:

> An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (citation omitted). Adverse employment actions generally fall into three categories: (1) "the employee's compensation, fringe benefits, or other financial terms of employment are diminished," which includes termination; (2) a transfer or other job change "significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted"; and (3) work conditions "are changed in a way that subjects [the employee] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment—an alteration that can fairly be characterized as objectively creating a hardship." *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002); *see also Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007).

(3/14/24 Order at 3, Dkt. No. 46.)

Count I of White-Peck's original complaint was dismissed because it failed to allege a plausible adverse employment action. That complaint alleged several harms resulting from

3

Wexford's alleged discrimination and harassment: (1) verbal reprimands and an administrative charge; (2) an added employment requirement that White-Peck wear baggy clothes "to the point of discomfort;" and (3) a hostile work environment where White-Peck was harassed and "body sham[ed]." The FAC now alleges those same three harms and adds a fourth: a threat of discharge.

This Court agrees with the predecessor judge's ruling that the first two alleged harms are insufficient to qualify as adverse employment actions. First, "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Indus.*, 257 F.3d 723, 729 (7th Cir. 2001). Because White-Peck does not connect the reprimand and performance mark to tangible job consequences (such as a suspension or a pay cut), they do not qualify as adverse employment actions. *See Williams v. Help at Home, LLC*, No. 23 CV 2578, 2024 WL 1701854, at *4 (S.D. Ill. Apr. 19, 2024) (collecting cases). Second, the requirement to wear baggy clothing did not plausibly "materially alter the terms or conditions of employment," and neither was it sufficiently alleged to be "more disruptive than a mere inconvenience." *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012).

Third, White-Peck claims that he endured a hostile work environment. The Court takes a fresh look at this claim in light of White-Peck's new allegation of a threat of discharge. To plead a hostile work environment successfully, White-Peck's complaint "must allege facts making it plausible that '(1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on [race]; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability.'" *Peaster v. McDonald's Corp.*, No. 22 CV 7037, 2023 WL 5387573, at *6 (N.D. Ill. Aug. 22, 2023) (quoting *Trahanas v. Nw. Univ.*, 64 F.4th 842, 853 (7th Cir. 2023)).To be sure, "[c]ourts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000). Instead, the work environment must be evaluated based on the "totality of the circumstances." *Hall v. City of Chicago*, 713 F.3d 325, 331 (7th Cir. 2013). Important factors for this inquiry include "the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

Taking the allegations together, Wexford is alleged to have created a work environment where White-Peck was threatened with termination, subjected to discomfort from wearing baggy clothes, reprimanded verbally and with a negative performance review, and "body shamed" and harassed for his body type, which he understood to be related to his race. But White-Peck has not alleged any concrete consequences or material changes in his working conditions to support his claim of a hostile work environment. *See Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 463 (7th Cir. 2007) ("For [a hostile work environment] claim to be actionable, the conduct of which [Plaintiff] complains must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." (internal quotation marks omitted)). He also does not allege any specific, overtly race-based comments or treatment, but instead claims only that he was discriminated against due to his body type, which he alleges was a proxy for his race.

4

In White-Peck's favor, the allegedly offensive conduct, if defined as the requirement to wear baggy clothes, apparently occurred daily and therefore was frequent. But the level of severity of the allegedly discriminatory treatment is not close to that typically required. *See, e.g.*, *Ross v. UChicago Argonne, LLC*, No. 18 CV 04200, 2019 WL 3562700, at *7 (N.D. Ill. Aug. 5, 2019) (dismissing complaint after declining to find a hostile work environment because allegations that co-worker "hung a black-faced puppet in [the plaintiff's] locker" and made two provocative comments that "lacked an overt discriminatory or racial purpose" were not severe enough); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004) (affirming summary judgment for defendant because, among other things, the alleged harassment was not overtly racial, humiliating, or physically threatening). Moreover, White-Peck has not alleged a tangible interference with his work performance. *Compare Ross*, 2019 WL 3562700, at *6 & n.1 (finding no unreasonable interference with work performance where plaintiff alleged he received an insulting performance review and was threatened to be reprimanded, and plaintiff was not demoted, transferred, or subjected to pay reduction), *with Hall*, 713 F.3d at 331 (finding hostile environment where plaintiff claimed "she reviewed useless videotapes, her colleagues were forbidden from speaking to her, she was prohibited from Division meetings, her efforts to take on more work were suppressed, and Johnson subjected her to occasional verbal outbursts as well as one minor physical altercation"). Thus, considering the totality of the circumstances, the Court finds that White-Peck has not plausibly alleged a hostile work environment.

Fourth, White-Peck's bare allegation that he was threatened with termination is not sufficient to carry his discrimination claim over the Rule 12(b)(6) plausibility threshold. His complaint does not indicate the basis of this threat, nor does it connect the threat with a discriminatory motive. Even assuming that the threat was related to his noncompliance with the apparel requirement, the unfulfilled threat of termination—without any allegation of related "material harm" like a career setback or pay detriment—"is not materially adverse." *Williams*, 2024 WL 1701854, at *4 (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003)); *see also Aguilar v. St. Anthony Hosp.*, 207 F. Supp. 2d 747, 756 (N.D. Ill. 2001) ("As for plaintiff's allegation that she was threatened with termination for speaking Spanish or otherwise, the Seventh Circuit has made clear that a threat of termination is not an employment action at all under the law.").

Finally, White-Peck's complaint alleges that "he ultimately resigned in disgust because of the racial harassment, as in constructive discharge." (FAC at 6, ¶ 29.) Whether White-Peck's resignation qualifies as a constructive discharge is a legal conclusion that this Court need not accept in deciding the Rule 12(b)(6) motion. *See Twombly*, 550 U.S. at 555. "A work environment . . . must be 'intolerable' to support a constructive discharge claim." *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014). As the Seventh Circuit has cautioned, it can be difficult to discern whether conditions will "ultimately qualify as intolerable . . . at the pleading stage, . . . before any evidence is required." *Id.* To allege constructive discharge plausibly, a plaintiff must at least provide "specific examples of poor treatment." *Id.* (reversing dismissal of constructive discharge claim where plaintiff alleged that defendant made her employment "intolerable by belittling her, assigning her extra work, and giving her unjustifiably poor evaluations, leaving her no viable choice but to drop out," *id.* at 823).

Here, White-Peck has not pleaded sufficient facts to support his constructive discharge claim. For one thing, this Court's finding that he has not alleged a hostile work environment all

but forecloses the possibility of a constructive discharge because "[w]orking conditions for constructive discharge must be even more egregious than the high standard for hostile work environment." *Tutman v. WBBM TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000). In any case, White-Peck's best case for constructive discharge would be that Wexford's threat of termination, along with its other actions, "communicated" to him that "he would be terminated." *Chapin v. Fort–Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).[3] Even after drawing all reasonable inferences in White-Peck's favor, however, the FAC still does not come close to alleging that Wexford put him into a reasonable apprehension that he "immediately and unavoidably [would] be terminated." *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 528–29 (7th Cir. 2015). Instead, the FAC alleges that White-Peck "resigned in disgust because of the harassment" and does not relate his resignation to any threat of termination.[4]

Because White-Peck has failed to plausibly allege the necessary elements of a discrimination claim under § 1981, the Court finds that the FAC does not state a claim in Count I. Defendant's motion to dismiss is granted as to that count.

### B. Count II: Retaliation

The predecessor judge in this case denied Wexford's previous motion to dismiss as to Count II. Accordingly, when filing his FAC, White-Peck intentionally left that count "unchanged." (FAC at 1.) Nonetheless, with its latest motion, Wexford again asks the Court to dismiss Count II. White-Peck opposes that request on the ground that the predecessor judge's previous ruling remains controlling.

Wexford is correct that an amended complaint generally supersedes the previous pleading. Because White-Peck has filed the FAC, this Court gives fresh consideration to arguments regarding any newly added allegations. *See Seeks*, 752 F. Supp. 3d at 1013. But as to allegations that remain unchanged between the two complaints, this Court will not overturn its predecessor's ruling unless there is good reason to do so. *See id.* And Wexford has not raised any new arguments regarding Count II. It raises the same arguments for dismissing Count II of the FAC that it made in response to the initial complaint. Applying the proper standard for § 1981

---

[3] The second type of constructive discharge arises "when an employee is exposed to egregious harassment." *Chapin*, 621 F.3d at 679. But as the Court has already discussed, the FAC does not allege sufficiently pervasive discrimination to make it plausible that White-Peck's work conditions were objectively "unbearable." *Id.* Even at the pleadings stage, he has failed to allege harassment with the requisite specificity, severity, or frequency, and being driven to discomfort by wearing baggy clothing is not severe enough to qualify as the predicate for constructive discharge. *See Hoffstead v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 21-CV-4335, 2022 WL 3107608, at *3 (N.D. Ill. Aug. 4, 2022) (collecting cases showing that "[i]n cases where constructive discharge claims have been dismissed at the pleadings stage, the plaintiffs' allegations of mistreatment were too general, too isolated and infrequent, or suggestive of mere inconvenience rather than a potentially abusive work environment").

[4] White-Peck asks this Court to find an adverse employment action in the FAC based on "indices that might be unique to a particular situation." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013). The analysis above accounts for any unique features of this case. And as the predecessor judge explained, this case is readily distinguishable from *Lavalais*, where the plaintiff suffered "severely restricted" job duties. 07/10/2024 Order, Dkt. No. 54 (quoting *Lavalais*, 734 F.3d at 633).

retaliation claims, the predecessor judge found that White-Peck stated a claim for retaliation because he sufficiently alleged (1) protected activity (namely, complaints to management) and (2) that White-Peck's allegations of "more harassment" as a result of his complaints "constitute[d] a materially adverse action for retaliation purposes." (03/14/24 Order at 6, Dkt. No. 46 (quoting *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016).) Because the allegations of Count II are unchanged and the predecessor judge's ruling was sound, this Court adopts the previous ruling here and denies Wexford's motion to dismiss as to Count II. *See Best*, 107 F.3d at 546.[5]

### III. Conclusion

For the foregoing reasons, Wexford's motion to dismiss the FAC is granted in part and denied in part. Because White-Peck was already granted leave to amend his complaint after the first motion to dismiss and yet still has fails to state a claim for race-based discrimination under § 1981, Count I is now dismissed with prejudice.

Dated: September 15, 2025

                                                    Andrea R. Wood
                                                   United States District Judge

---

[5] Because the Court denies the motion to dismiss as to Count II, it need not reach White-Peck's motion to strike. (Dkt. No. 68.) White-Pick's motion to strike is therefore denied as moot.